1  Andrew T. Ryan, Esq. (SBN 227700)
   THE RYAN LAW GROUP
2  317 Rosecrans Ave.
   Manhattan Beach, CA 90266
3  Tel: (310) 321-4800
   Fax: (310) 496-1435
4  Andrew.ryan@theryanlawgroup.com

5  Attorneys for Plaintiff

6

7                UNITED STATES DISTRICT COURT

8             SOUTHERN DISTRICT OF CALIFORNIA

9

10  ALEXA DEFAZIO, an individual,        Case No.  3:22-cv-01422-BTM-BLM
    on behalf of herself and those
11  similarly situated,

12              Plaintiffs,              **SECOND AMENDED CLASS
                                         ACTION COMPLAINT FOR**
13       v.
                                         **(1) VIOLATION OF CAL. BUS. &
14  TRIPLEDOT STUDIOS LIMITED,           PROF. CODE §17200;**
    a foreign corporation;
15                                       **(2) VIOLATION OF CAL. BUS. &
                Defendant.               PROF. CODE §17500;**
16
                                         **(3) FRAUD;**
17
                                         **(4) NEGLIGENT
18                                       MISREPRESENTATION**

19                                       **DEMAND FOR JURY TRIAL**

20

21

22

23

24

25

26

27

28

---

SECOND AMENDED COMPLAINT                 Case No.  3:22-cv-01422-BTM-BLM

On May 5, 2022, Plaintiff Alexa DeFazio ("Plaintiff") filed a lawsuit in San Diego Superior Court entitled *Alexa DeFazio v. Tripledot Studios Limited*, Case No. 37-2022-00017054-CU-NP-CTL. On July 18, 2022, Plaintiff filed a First Amended Complaint in San Diego Superior Court. Defendant Tripledot Studios Limited ("Defendant") was served with the First Amended Complaint on August 22, 2022. On September 20, 2022, Defendant removed the lawsuit to federal court. On September 27, 2022, Defendant filed a Motion to Dismiss Plaintiff's First Amended Complaint. On May 15, 2023, the Court issued its Order Granting in Part and Denying in Part Defendant's Motion to Dismiss and Strike.

Plaintiff, a citizen of San Diego County, individually and on behalf of others similarly situated, hereby brings this Second Amended Complaint for damages and injunctive relief. Plaintiff files this suit against Triple Dot Studios Limited, a British corporation and alleges as follows:

## INTRODUCTION

1.      This lawsuit is brought as a class action on behalf of Plaintiff and similarly situated consumers who have been deceived into making in-game purchases of deceptively marketed in-game items in Defendant's mobile application game called Blackjack ("Game").  Defendant has falsely advertised price discounts for in-game purchases to mislead and induce Plaintiff and those similarly situated into making in-game purchases.

2.      Defendant is a developer of mobile games playable on iPhone and Android devices.  One its top games is Blackjack. On information and belief, Defendant was reached approximately $100 million in revenue per year. Through "Blackjack," Defendant offers electronic casino-style blackjack to consumers. Consumers play the Game on Apple iOS devices and Android Devices.

3.      Plaintiff and other consumers who play the Game are not required to agree to any terms of use or end user license agreement prior to playing the game.

Players can play Blackjack without creating an account.

4.      On information and belief, over 11 million people play Defendants' games.  On information and belief, Defendant recently raised $78 million in funding.

5.      Blackjack is free for consumers to download and play.  Defendants reap massive profits by selling "in-app" chip bundles that range from $1.99 to $99.99.  However, in its direct marketing to consumers (including representations made at the time of purchase), Defendant advertised false former prices to induce players into believing they must take advantage of a special sale price.

6.      Defendant used strikethrough graphics and statements to trick consumers into believing they were benefitting from limited-time promotions that substantially increased the value of their in-game purchases.  These purported savings were false, however, because the stricken "original" pricing that these ads referenced were fabricated.

7.      These purported special offers ran for months or longer.  But at no point, let alone within three months of the advertised discounts, were these in-game items ever actually offered at the "original" stricken, non-discounted price.  Stated differently, Defendant never sold the in-game items at the original price that was stricken in the sales promotions.  It just offered false presentations of purported discounts from purported original deals that never existed, and its players bought packs on "sale."

8.      Further, the advertised "original" pricing does not reflect the prevailing market retail pricing for these virtual in-game items.

9.      The Federal Trade Commission ("FTC") describes as false former pricing schemes as deceptive: "One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was

offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious - for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction - the 'bargain' being advertised is a false one; the purchaser is not receiving the unusual value he expects." 16 CFR §233.1(a).

10.     California statutory and regulatory law also expressly forbids such false discounted pricing schemes: "No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement." Cal. Bus. & Prof. Code §17501.

11.     Defendants knew, or should reasonably have known, that its comparative price advertising was false, deceptive, misleading, and unlawful.

12.     Defendant has fraudulently concealed from and intentionally failed to disclose to Plaintiff and the putative class members the truth about its advertised price discounts and former prices.

13.     Through this false and deceptive marketing, advertising, and pricing scheme, Defendant has violated California law prohibiting the advertisement of goods for sale as discounted from false former prices and prohibiting misleading statements about the existence and amount of price reductions.

14.     The claims and issues asserted herein are governed by California state law.  The State of California has the greatest interest in policing corporate conduct occurring within the State.

15.     Plaintiff, individually and on behalf of all others similarly situated

hereby seek restitution, injunctive relief, punitive damages, attorneys' fees, and all other relief which the Court may deem appropriate.

**PARTIES**

16.    Plaintiff Alexa DeFazio is a citizen and resident of San Diego County, California.  She downloaded Blackjack on her iPhone from the Apple App Store in this District.  She played the Game in this District.  She accessed Defendant's in-game store and saw the false advertising in that store in this District.  She was induced by this false advertising into making in-game purchases in this District from Defendant's in-game store.

17.    Plaintiff did not create an account in order to play the Game.  Plaintiff was not required to agree to Defendant's terms of use when downloading or playing the Game for the first time.  Plaintiff was not required to agree to Defendant's terms of use when making purchases from Defendant's in-game store.  Plaintiff was never required to click or take other action to accept Defendant's terms of use.

18.    On information and belief, Defendant Tripledot Games Limited is a corporation organized and existing under the laws of England, with its principal place of business at 90 Whitfield Street, West End, England W1T 4EZ, GB.

**JURISDICTION AND VENUE**

19.    This Court has jurisdiction over this action under the Class Action Fairness Act of 2005.  Pursuant to 28 U.S.C. §§1332(d)(2), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed classes is a citizen of a different state than Defendant.

20.    This Court has personal jurisdiction over Defendant, because it conducts substantial business and directs its activities into this District, and a substantial part of the acts and omissions complained of occurred in this District.

21.    Venue is proper in this District under 28 U.S.C. §1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this District.  For example, Plaintiff is a resident of this District and she downloaded, played and made in-game purchases from Defendant in this District.

22.    In addition, venue is proper in this District under 28 U.S.C. §1391(b)(1) and §1391(b)(3), in that Defendant is subject to this Court's personal jurisdiction.

### **FACTS**

23.    Blackjack is a mobile application casino-style game developed and distributed by Defendant.  The Game is available on iPhone and Android devices through the Apple App Store and Google Play platforms, respectively.  On information and belief, the Game is one of the top blackjack games available on iPhone and Android devices.

24.    Users of the Game receive a certain amount of free chips for use in the Game when they first download the Game and in exchange for viewing advertisements. Users can also purchase chips for use in the Game from a virtual store operated by Defendant.  Users can purchase bundles of in-game chips ranging in price from $1.99 to $99.99.

25.    The Game's virtual store displays stricken original deals with purported sale deals adjacent to the stricken deal. The advertisement of these chip bundles purportedly on sale are false, deceptive and intended to mislead players into making in-app purchases that they otherwise would not have made.  Defendant falsely promotes these bundles as being on sale or discounted by misrepresenting that such bundles normally offer substantially less value than the advertised deal.

26.    Defendant's false strikethrough ads display an amount of chips, with a strikethrough line, and then in larger, bold-faced font, a larger amount of chips, implying that the bundle normally contains a smaller amount of chips for the same

price.  For example, a $1.99 bundle has 70,000 chips with a strikethrough line over that number and a bigger, bolder display showing 100,000 chips as the current sale deal for that price.  The intended message is that the $1.99 bundle typically contains 70,000 chips, but is now being offered with more chips (100,000) at the same price.  An example of such a display for the Game is shown below:



27.    These false strikethrough ads were used to sell bundles in the Game on a daily basis.  On information and belief, these bundles never offered the stricken amount of chips for the displayed price.  The false strikethrough ads applied across multiple price points in the Game, including the $4.99 bundle, $9.99 bundle, $19.99 bundle, $49.99 bundle and $99.99 bundle.

28.    The $9.99 bundle further included a banner saying "Most Popular." The $49.99 bundle further included a banner saying "Special Offer." On information and belief, this "special offer" has been available in the Game at all times.

29.    Between January 10, 2022 and February 10, 2022, Plaintiff purchased

two chip bundles from the Game priced at $9.99 each. Plaintiff made these purchases in this District using her iPhone mobile device. Plaintiff made the purchases through the Game's store as depicted in paragraph 26 above.

30.    Based on the stricken "250,000" quantity of chips in the Game's store for the $9.99 chip bundle, Plaintiff reasonably understood that the ordinary, prevailing and normal value for chips in the Game was 250,000 chips for $9.99. Based on this and the additional verbiage on the Game's store including the phrases "Most Popular" and "Special Offer," Plaintiff reasonably understood that 300,000 chips for $9.99 was a sale offer and represented a value better than the normal, prevailing or ordinary offer for chips in the Game.

31.    This understanding was material to Plaintiff's decision to make her purchases.

32.    Had Plaintiff known that the chips were not truly on sale and that 300,000 chips for $9.99 was not a better value for chips than ordinarily offered in the Game, Plaintiff would not have made her purchases.

33.    On information and belief, the Game did not offer 250,000 chips for $9.99 in the 90 days prior to Plaintiff's first purchase, if ever.

34.    The Game did not offer 250,000 for $9.99 in the 90 days after Plaintiff's purchases.

35.    Defendant had actual knowledge that the false strikethrough ads contained false or misleading misrepresentations as to their prior values. Defendant designed and promoted these advertisements while having actual knowledge that these quantitative representations of sale values were false.

36.    These chips are critical to the Game, as they may be necessary for the players to continue playing the casino-style blackjack once they inevitably lose all of their virtual chips and access to free chips on a given day.

37.    Defendant promoted these advertisements to induce players to

purchase the chip bundles all the while knowing that the bundles contained quantitative misrepresentations with respect the value of chips displayed.

38.    The amount of chips included in a bundle, and whether the bundle being offered for sale represents a good value and outsized amount of chips a player is receiving for his or her purchase with the corresponding bundle, is a material consideration when a player decides whether to purchase a bundle.

39.    Plaintiff and those similarly situated reasonably relied on the "strikethrough" pricing when purchasing bundles promoted through false strikethrough ads.  Had Plaintiff and those similarly situated known the "strikethrough" pricing was false, they would not have purchased some or all of the bundles promoted through false strikethrough ads.

40.    The false strikethrough ads are violative of 16 CFR §233.1(a) because the former, stricken, deals displayed in the false strikethrough ads are not "actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time."  Rather, the false strikethrough ads display former bundles that are "fictitious" and with "an artificial, inflated price" for the purpose of creating the false perception to the consumer "of a large reduction."  The false strikethrough ads promote a false bargain where "the purchaser is not receiving the unusual value he expects."  *Id*.

41.    The false strikethrough ads are also violative of Cal. Bus. & Prof. Code §17501, because the former bundle and price advertised were never "the prevailing market price … within three months next immediately preceding the publication of the advertisement."  Nor do the false strikethrough ads "clearly, exactly and conspicuously stated in the advertisement" when such former prices were prevailing.

## CLASS ALLEGATIONS

42.    Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), on behalf of herself and the following proposed "Nationwide Class":

> All persons in the United States who purchased virtual chip bundles priced at $4.99 or higher in the Game within the applicable statute of limitations.

43.    Plaintiff also brings this action on behalf of herself and on behalf of the following class (the "California Class"):

> All persons in the State of California who purchased virtual chip bundles priced at $4.99 or higher in the Game within the applicable statute of limitations.

44.    Excluded from the proposed Classes are Defendant, its parent, subsidiaries and affiliates, and their respective employees, officers, directors, legal representatives, heirs, successors, and the judicial officers and their immediate family members and associated court staff assigned to this case, as well as all persons who make a time election to be excluded from the proposed class.

45.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence he would use to prove those elements in an individual action alleging the same claims.

46.    This action meets all applicable standards of Fed. R. Civ. P. 23 for class certification, in that Plaintiff can demonstrate the elements delineated below.

47.    **Numerosity.**  The members of the proposed Classes are so numerous and geographically dispersed that individual joinder of all proposed class members is impracticable.  See Fed. R. Civ. P. 23(a)(1).  While Plaintiff believes that there are hundreds of thousands of members of the proposed Classes, the precise number of class members is unknown, but may be ascertained from Defendant's books and

records.

48.    On information and belief, Defendant maintains data related to its users and their in-app purchases.

49.    On information and belief, Defendant has the ability to send notices to its users through the user interface of the Game.

50.    Applying a reasonable and prudent person standard to the users of the Game under the same or similar circumstances, each user would qualify to be a class member requesting the right to cancel and get refunds on their in-app purchases for bundles displaying a false strikethrough ads.  Any reasonable and prudent person under the same or similar circumstances wants to have the flexibility to disaffirm an in-app purchase that was made while believing the purchase were part of a sale or promotion but, in reality, were not.

51.    **Ascertainability.** The Classes are ascertainable because their members can be readily identified using business records, and other information kept by Defendant in the usual course of business and within its control or Plaintiff and the class members themselves.  Plaintiff anticipates providing appropriate notice to the Classes to be approved by the Court after class certification, or pursuant to court order.

52.    **Commonality and Predominance.** This action involves common questions of law and fact, which predominate over any questions affecting individual class members. See Fed. R. Civ. P. 23(a)(2) and (b)(3). These include, without limitation:

A. Whether Defendant engaged in the conduct alleged in the Complaint;

B. Whether Defendant violated the applicable statutes alleged herein;

C. Whether Defendant designed, advertised, marketed, distributed, sold, or otherwise placed Blackjack into the stream of commerce in the United States;

D.  Whether Defendant engaged in conduct directed to the State of California;

E.  Whether Defendant's presentation of false strikethrough ads are misleading to a reasonable consumer;

F.  Whether Plaintiff and members of the Classes were injured and harmed directly by Defendant's false advertising designed to entice users into making in-app purchases they otherwise would not have made;

G.  Whether Plaintiff and members of the Classes are entitled to damages due to Defendant's conduct as alleged in this Complaint, and if so, in what amounts;

H.  Whether Plaintiff and members of the Classes are entitled to equitable relief, including, but not limited to, restitution or injunctive relief as requested in this Complaint.

53.  **Typicality.** Plaintiff's claims are typical of the putative class members' claims because, among other things, all such class members were comparably injured through Defendant's wrongful conduct as described above. See Fed. R. Civ. P. 23(a)(3).  Defendant's creation and display of its misleading advertisement in the Game is uniform for Plaintiff and all members of the Classes.

54.  **Adequacy.** Plaintiff is an adequate proposed class representative because her interests do not conflict with the interests of the other members of the proposed Classes she seeks to represent; because he has retained counsel competent and experienced in complex class action litigation; and because he intends to prosecute this action vigorously. The interests of the proposed Classes will be fairly and adequately protected by Plaintiff and his counsel. See Fed. R. Civ. P. 23(a)(4).

55.  **Superiority.** A class is superior to any other available means for the

fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and putative class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the proposed Classes to individually seek redress for Defendant's wrongful conduct.

56.    Applying the principles of equity or balance of equities, expecting an individual Plaintiff who is at a disadvantage with limited resources and spending capacity, and with minimal negotiating power, if any, to litigate claims against Defendant, a foreign corporation that has immense resources, would be unfair. Class actions are a necessary and essential means to provide for public interest litigations with checks and balances to curtail deceptive practices by powerful private corporations, including Defendant.

57.    There is no special interest in class members individually controlling the prosecution of separate actions. And even if class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and it increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. See Fed. R. Civ. P. 23(b)(3).

## APPLICABLE LAW

58.    Plaintiff is a citizen and resident of San Diego County, California. She downloaded and played the Game in California. She made purchases from the Game store in California.

59.    California's substantive laws may be constitutionally applied to the

claims of Plaintiff under the Due Process Clause, 14th Amend. §1, and the Full Faith and Credit Clause, Art. IV §1 of the U.S. Constitution. California has significant contacts, or significant aggregation of contacts, to the claims asserted by Plaintiff, thereby creating state interests that ensure that the choice of California state law is not arbitrary or unfair.

60.    The application of California laws is also appropriate under California's choice of law rules because California has significant contacts to the claims of Plaintiff and California has a greater interest in applying its laws here than any other interested state.

61.    California law may be used on a class-wide basis, because the interests of other states do not outweigh California's interest in having its law applied.

62.    California has a unique interest in having its laws apply to this case, including to non-residents. The Games are advertised and distributed primarily through the Apple and Google mobile stores. These mobile stores are owned and operated by Apple and Google, respectively, both companies having headquarters in California.

63.    On information and belief, in distributing its games through the Apple and Google mobile stores, Defendant entered into developer agreements with Apple and Google governing the development and distribution of the Game. Those agreements apply California law.

64.    Consumers execute their transaction for the in-game chips in the Game with Apple and Google payment systems. Those payments are processed and executed through these California entities and servers located in California.

65.    Plaintiff and other consumers enter into end user agreements with Apple and Google in order to download, play and make purchases from the Game. Those end user agreements require the application of California law.

66.     On information and belief, Defendant engages several companies based in California to increase user acquisition, user engagement and Game revenues, including AppLovin Corporation, AdColony, Inc., Facebook, Inc., Google, LiftOff, Inc., and Unity, Inc.

## FIRST CLAIM FOR RELIEF

### Violation of California's Unfair Competition Law ("UCL")

### Cal. Bus. & Prof. Code §17200, *et seq.*

67.     Plaintiff incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

68.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code §17200.

69.     A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

70.     A business act or practice is "unfair" under the UCL if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims. A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

71.     Defendant has violated the "unlawful" prong under the UCL and has engaged in "unfair, deceptive, untrue or misleading" advertising.

72.     The Federal Trade Commission Act prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. §45(a)(1)) and specifically prohibits false advertisements. 15 U.S.C. §52(a). FTC Regulations describe false former pricing schemes-similar to Defendant's False Sale Packs and False Gold Strikethrough Packs in all material respects-as deceptive practices that would violate the FTC Act.

73. 16 C.F.R. §233.1 states:

(a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious - for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction - the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.

(b) A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of his business, honestly and in good faith - and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based. And the advertiser should scrupulously avoid any implication that a former price is a selling, not an asking price (for example, by use of such language as, "Formerly sold at $___"), unless substantial sales at that price were actually made.

74.     California law also prohibits false former pricing schemes.  Cal. Bus. Code. §17501 entitled "Value determinations; Former price advertisements,"

states:

> For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.

> No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

75. California's False Advertising Law also prohibits a business from "[a]dvertising goods or services with intent not to sell them as advertised," Cal. Civ. Code §1770(a)(9), and prohibits a business from "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Id. §(a)(13).

76. Defendant's false strikethrough ads violate the unlawful prongs of the UCL since they violate 16 C.F.R. §233.1, Cal. Bus. Prof. Code §1750, Cal. Civ. Code §§1770(a)(9) and (a)(13).

77. Defendant has also violated the "unfair" prong of the UCL by falsely representing that its consumers received a discount from a referenced "original" former chip quantities in its false strikethrough ads.  In fact, Defendant displayed an arbitrary deal for the goods contained in these bundles and then falsely pretended the bundles had been offered for sale at a value less than their "limited time sale" contents.

78. The gravity of the harm to Plaintiff and members of the Classes resulting from these unfair acts and practices outweighs any conceivable reasons, justifications, or motives that Defendant may have had for engaging in such

deceptive acts and practices.

79.     Additionally, Defendant has violated the "fraudulent" prong of the UCL because its marketing and advertising materials included false "original" prices in its false strikethrough ads. In actuality, the bundles were never sold at the original chip count for the displayed price.

80.     Defendant's acts and practices deceived Plaintiff and the Classes at large. Specifically, Plaintiff and the Classes relied on these misleading and deceptive representations regarding the limited-time bonuses they could expect to receive in the packs. Each of these representations and deceptions played a substantial role in Plaintiff's decisions to purchase the packs, and Plaintiff would not have done so in the absence of such representations.

81.     As a result of these violations under each of the fraudulent, unfair, and unlawful prongs of the UCL, Defendant has been unjustly enriched at the expense of Plaintiff and members of the proposed Classes. Specifically, Defendant has been unjustly enriched by obtaining revenues and profits that it would not otherwise have obtained absent its false, misleading, and deceptive conduct.

82.     Through its unfair acts and practices, Defendant has improperly obtained money from Plaintiff and the class members. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and all class members, and to enjoin Defendant from continuing to violate the UCL, and/or from violating the UCL in the future.  Otherwise, Plaintiff, the class members, and members of the general public may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## SECOND CLAIM FOR RELIEF

### Violation of California False Advertising Law ("FAL")

### Cal. Bus. & Prof. Code §17500 *et seq*.

83.     Plaintiff incorporates by reference all allegations in this Complaint

and restates them as if fully set forth herein.

84.    The FAL prohibits unfair, deceptive, untrue, or misleading advertising, including, but not limited to, false statements as to worth, value, and former price.

85.    Furthermore, the FAL provides that: "No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement." Cal. Bus. & Prof. Code §17501.

86.    The false strikethrough ads misrepresent the existence of a sale whereby players can purchase purportedly more chips in a bundle than the prevailing bundle.

87.    Through its unfair acts and practices, Defendant has improperly obtained money from Plaintiff, the Class and Subclass. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and Class members and to enjoin Defendant from continuing to violate the FAL, and/or from violating the FAL in the future. Otherwise, Plaintiff and members of the general public may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## THIRD CLAIM FOR RELIEF

### Fraud

88.    Plaintiff incorporates by reference all allegations in this Complaint and restate them as if fully set forth herein.

89.    Defendant represented to Plaintiff and individuals similarly situated that various in-game purchases were on sale in that they gave a higher amount of chips.

90.    These representations were known by Defendant to be false because the bundles were never offered at the purported "normal" amount of chips and the items were perpetually on "sale."

91.    Defendant designed the graphical images on the advertisements in a way that intentionally attracted Plaintiff and those similarly situated to the enticing but false claims regarding chip and gold amounts and the existence of sales.

92.    Plaintiff and those similarly situated reasonably relied upon the claims made in the advertisements in deciding to purchase the aforementioned bundles.

93.    Upon purchasing the bundles, Plaintiff and the Class members were harmed because, had they known the advertising claims were false, they would not have made some or all of the purchases.

94.    Reliance on Defendant's misrepresentations in its bundle advertisements was a substantial factor in causing harm to Plaintiff and those similarly situated.

95.    Defendant's conduct has therefore caused and is causing immediate injury to Plaintiff and the putative Class.

## FOURTH CLAIM FOR RELIEF

### Negligent Misrepresentation

96.    Plaintiff incorporates by reference all allegations in this Complaint and restate them as if fully set forth herein.

97.    Defendant represented to Plaintiff and Class members that various purchased bundles were on sale in that they gave a higher amount of chips than normal.

98.    These representations were false because the bundles were never offered at the stricken chip quantities for the given price points.

99.    Defendant had a duty to ensure that the representations in the Game's store were accurate and not misleading.

100.   Defendant knew or should have known that the stricken chip quantities in the Game's store were false and misleading.

101.   The false and misleading chip quantities in the Game's store induced Plaintiff and Class members into purchasing chips from the Game that they otherwise would not have purchased.

102.   Defendant's conduct has therefore caused injury to Plaintiff and the Class.

## PRAYER FOR RELIEF

103.   Plaintiff, on behalf of herself and the proposed Classes, pray for relief and judgment against Defendant as follows:

A. Certifying the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as representative of the Classes, and designating Plaintiff's counsel as class counsel;

B. Awarding Plaintiff and the class members compensatory damages and actual damages in an amount exceeding $5,000,000, to be determined by proof;

C. Awarding Plaintiff and the class members appropriate relief, including actual and statutory damages;

D. For punitive damages;

E. For civil penalties;

F. For declaratory and equitable relief, including restitution and disgorgement;

G. For an order enjoining Defendant from continuing to engage in the wrongful acts and practices alleged herein;

H. Awarding Plaintiff and the class members the costs of prosecuting this action, including expert witness fees;

I. Awarding Plaintiff and the class members reasonable attorney's fees

and costs as allowable by law;

J.  Specifically awarding Plaintiff and the class members reasonable attorney's fees and costs, as well as injunctive relief;

K.  Awarding pre-judgment and post-judgment interest; and

L.  Granting any other relief as this Court may deem just and proper

## JURY DEMAND

Plaintiff hereby demands a jury trial on all issues and claims so triable.


DATED: June 14, 2023                              THE RYAN LAW GROUP


                                                  /s/ Andrew T. Ryan
                                                  Andrew T. Ryan
                                                  Attorney for Plaintiff